IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILIDOR RX SERVICES LLC, et al.,** : | |
| : | |
| **Plaintiffs,** : | |
| : | **CIVIL ACTION** |
| v. : | |
| : | **NO. 20-5518** |
| **POLSINELLI PC, et al.,** : | |
| : | |
| **Defendants.** : | |
| : | |
| : | |

**MEMORANDUM**

**TUCKER, J.**                                                                                    August 5, 2021

Before this Court is a Motion to Dismiss from Defendants Polsinelli PC and one of its partners, Jonathan N. Rosen, Esq. (ECF 12) and a Response in Opposition from Plaintiffs Philidor Rx Services LLC and its CEO, Andrew Davenport (ECF 18). Because Plaintiffs have failed to allege a concrete contract breach, the motion is partially granted on the breach of contract and unjust enrichment claims, but denied as to the mismanagement of the litigation claim.

**I.      FACTUAL AND PROCEDURAL BACKGROUND[1]**

Philidor Rx Services is a specialty online pharmacy. The U.S. Securities and Exchange Commission (SEC) began investigating Philidor in Fall 2015, as a part of the SEC's broader investigation into Valeant Pharmaceuticals International, Inc. and its relationship with the online pharmacy. The investigation expanded to include probes by Congress and the Department of Justice. Philidor by the start of 2016 decided to move its legal representation for these investigations to Polsinelli and one of its DC-based partners, Jonathan N. Rosen. Philidor and its

---

[1] This section primarily draws from Plaintiff's Response in Opposition to the Motion to Dismiss (ECF 18).

CEO Andrew Davenport signed their separate legal engagement letters with Polsinelli in early April 2016. Davenport had become the focus of a number of the related investigations, and as such was also covered under the legal representation as an individual.

The legal representation was based on an upfront flat fee, and encompassed any investigation of Philidor's "operations associated with its distribution agreement with Valeant", up to and including those which led to criminal charges. The flat fee was $14 million, with $10 million paid by Philidor and $2 million from Davenport. Another $2 million paid by Philidor was to compensate separate counsel, money Polsinelli would exclusively control the use of.

Philidor contends that this agreement was designed to cap its exposure for legal fees.

As the investigations expanded, Gary Tanner, a former Valeant and Philidor employee, became a target. Tanner retained Wilmer Hale to represent him.[2] Wilmer Hale's representation was on a more traditional hourly fee basis. Through Polsinelli, Philidor agreed to pay the hourly Wilmer Hale fees, and that Tanner and Davenport would have a joint defense—both firms would be rowing in the same direction as to any possible criminal charges against either individual.

Both men were subsequently arrested in November 2016. The January 2017 indictment charged them with four counts, including theft of honest services and conspiracy to launder money. The government alleged both were involved in an illegal kickback scheme advancing the interests of Philidor contrary to the interests of Valeant.

Philidor alleges it was at this point, when Polsinelli realized that both men would need to be defended through the conclusion of a criminal trial, that it decided to protect itself from significant financial downside on the flat fee agreement. This was accomplished, Plaintiffs

---

[2] Plaintiffs allege "upon information and belief" that the decision to hire Wilmer Hale was made by Polsinelli. Compl. ¶ 21.

contend, by offloading work to Wilmer Hale,[3] which was responsible for the same criminal defense, but paid on an hourly basis. Wilmer Hale drafted and filed most pretrial motions, responses to government motions, jury instructions and proposed voir dire questions. Polsinelli also sought to shift the costs of work that was supposed to be done in-house to Philidor, such as by outsourcing document review to outside firms and charging these expenses as "expert fees" that reduced the amount the firm would need to pay for trial experts. Polsinelli also hired other counsel to consult with it on Davenport's defense, even though that outside consulting was apparently not necessary.

The trial against both men began in early May 2018. Plaintiffs contend that Polsinelli "understaffed" the trial and offloaded the bulk of the work to Wilmer Hale. Plaintiffs point to Wilmer bringing four lawyers to each day of the trial, while Polsinelli brought just two lawyers.

Davenport and Tanner were convicted on all four counts, convictions that were upheld on appeal. Philidor contends that Polsinelli's actions led to it being charged over $5 million in expert fees, $3 million above the amount agreed to, millions of dollars in data management fees, and over $13 million in "separate legal counsel" fees, instead of the $2 million agreed to.

Plaintiffs sued Polsinelli on November 5, 2020. The firm filed its Motion to Dismiss on January 22, 2021.

**II.   LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint when factual allegations are not sufficient to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v.*

---

[3] Wilmer Hale and Tanner are not parties in this suit.

*Twombly*, 550 U.S. 544, 545 (2007). A court must accept well-pleaded facts as true but disregard legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). A court must also determine whether facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief." *Id* at 211. Determining whether a complaint has raised a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

### III.  DISCUSSION

Polsinelli seeks the dismissal of the entire Complaint, on grounds that Philidor cannot maintain any of its contract-based claims, and that the statute of limitations or, in the alternative, the voluntary payment doctrine, bar Philidor's negligence-based claims. While this Court agrees that Plaintiffs' contract-based claims are unviable, Philidor has alleged conduct that forms the basis of a viable legal malpractice claim. After addressing both elements, this Court will discuss the remaining arguments on standing and defendant matters.

### A. Philidor Has Failed to Allege a Contract Breach, as it Cannot Point to a Particular Duty Breached

Philidor has failed to allege conduct constituting a breach of the engagement letters for either the company or Davenport. Philidor argues the conduct it alleges as to Polsinelli—that the firm shifted work over to its (hourly billed) joint defense partner Wilmer Hale in an effort to protect itself from the financial downside of a flat fee arrangement in a lengthy, complex criminal investigation—constitutes either a breach of the terms of the contract or a breach of the duty of good faith and fair dealing. Neither is true. Plaintiff's Complaint boils down to annoyance that it did not have the cost of its legal exposure capped, as it had expected by entering into a flat fee agreement. If Philidor subjectively believed this when it was signing the

engagement letter, such an expectation is not actually reflected in its contents and therefore cannot be the basis for any contractual claim as to the litigation.

To allege a breach of contract under Pennsylvania law,[4] a party needs to allege (1) the existence of a contract, "including its essential terms", (2) breach of a contractual duty, and (3) resultant damages. *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. Ct. 2000).

There is no better way to evaluate the obligations of the contract relating to the accusations in this suit than by looking to the text. Specifically, the "Scope of Representation", "Responsibilities", and "Fees and Expenses" portions of Philidor's engagement agreement, which are reproduced below.[5]

> **2. Scope of Representation.** Regarding the scope of our representation, we understand that we are being retained to serve as counsel with respect to the defense of any investigation or related enforcement action initiated by the United States Department of Justice, United States Congress, United States Securities Exchange Commission or any other government enforcement agency for any matter involving Philidor's operations associated with its distribution agreement with Valeant ("the Matter").
>
> **3. Responsibilities. We will provide legal counsel and assistance in accordance with this letter and will rely upon information and guidance you provide to us.** We will keep you reasonably informed of progress and developments, and respond to your inquiries.
>
> In order to enable us to provide the services set forth in this letter, Corporate Client [Philidor] will disclose fully and accurately all facts and

---

[4] Defendants note in their briefing that this case presents choice of law issues, as Plaintiff is a Pennsylvania-based party and the events giving rise to the claims occurred in this state, but the criminal trial was held in New York. Mot. Dismiss at 7 n.2. In a case where a federal court has diversity jurisdiction under 28 U.S.C. § 1332, the court applies "the choice of law rules of the forum state in determining which state's law will be applied to the substantive issues before it." *Reinert v. Nationwide Ins. Co.*, 2013 WL 1311097, at *2 (E.D. Pa. Apr. 1, 2013). Pennsylvania choice of law rules first ask if there is an "actual conflict" between the laws of the two states. *Id.* at 3. When there is no conflict, cases can be cited "interchangeably" or Pennsylvania law may be applied. *Manor Care, Inc. v. Cont'l Ins. Co.*, 2003 WL 22436225, at *4 (E.D. Pa. Oct. 27, 2003). Defendants contend and Plaintiffs do not dispute that the only conflict in legal approaches is on the statute of limitations, which this Court does not have to consider in detail to resolve this motion. As a result, this Court will allow for the interchangeable use of Pennsylvania and New York precedent on other issues.

[5] Davenport as an individually represented party signed a separate engagement letter. However, the equivalent portions of his letter are not meaningfully different from the reproduced portions of the Philidor letter.

5

> keep us apprised of all developments relating to the matter. Corporate Client will also cooperate fully with us and be available to attend meetings, conferences, hearings and other proceedings on reasonable notice, and stay reasonably informed on all developments relating to the matter.
>
> […]
>
> **6. Fees and Expenses.** For the services described here, **The Law Firm shall be paid $10,000,000 by Philidor and $2,000,000 by Davenport. From this amount, The Law Firm shall pay all costs and an amount not to exceed $2,000,000 for any expert fees or any necessary fees to third parties engaged by the Law Firm on the Clients behalf.**
>
> In addition, **the Law Firm will receive a single payment of $2,000,000 from Philidor, which, in the Law Firm's exclusive discretion and approval, may be used to pay reasonable separate counsel legal fees and costs which Corporate Client has agreed to assume** ("Separate Counsel fees"). Upon receipt, these funds are the Law Firm's and Philidor no longer has any claim for such funds. To finance the above-mentioned arrangements, Philidor will wire the Law Firm a total of $12,000,000. Mr. Davenport will wire the Law Firm a total of $2,000,000. In the event Mr. Davenport is not indicted or otherwise charged with criminal offenses contemporaneous with a settlement with the Government, the Law Firm will pay $2,000,000 to Mr. Davenport. In anticipation of this arrangement, the Law Firm has already received $10,000,000 from Philidor. As a result, Philidor will wire the Law Firm an additional $2,000,000.
>
> In the event of a conflict which precludes the Law Firm from representing both Mr. Davenport and the Corporate Client, the Law Firm's fee will be reduced by $1,000,000, exclusive of any fees already accrued on the conflicted representation, not to exceed $1,000,000. The Law Firm will deposit any remainder between the $1,000,000 and the already accrued fees on the conflicted representation into the Separate Counsel fees. In the event of a conflict which requires that the Corporate Client engage new counsel, fees for the Corporate Client's new counsel will be paid by the Separate Counsel fees.
>
> **The Law Firm will administer the funds in the best interests of the Corporate Client and Mr. Davenport.** Corporate Client agrees that any remaining funds designated as Separate Counsel fees will be kept by the Law Firm.

Philidor Engagement Letter, Mot. Dismiss Ex. A (ECF 12-2) (emphasis added).

6

As one can see from the text, particularly the bolded portions, nowhere does Polsinelli bind itself to contractual terms that could uphold this breach of contract claim. There is no language such as "The Firm will spend the absolute minimum amount of money beyond the flat fee to provide a viable defense", or "The Firm will minimize the degree that resources and legal work are split with Separate Counsel, particularly if Separate Counsel are governed by different fee arrangements" anywhere in the agreement. To properly allege a breach of contract, a party needs to point at a specific provision of the document the counterparty breached. *See, e.g., Bradshaw v. Pennsylvania State Univ.*, No. 10-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011) ("The plaintiff does not identify in the complaint the provisions of the handbook that the defendant allegedly breached"); *Owens v. Gaffken & Barriger Fund, LLC*, No. 08 CIV. 8414 (PKC), 2009 WL 3073338, at *14 (S.D.N.Y. Sept. 21, 2009) ("the complaint fails to cite to any specific contractual provisions alleged to have been breached).

The breaching conduct Philidor alleges includes claims that the firm sent "work Polsinelli should be doing pursuant to the parties' agreement, including document review and data management, to outside firms." Compl. ¶ 37. As Defendants correctly point out, the engagement letters did not prevent the firm from sending work to outside firms, and actually "expressly and clearly authorized the hiring of separate counsel." Defs.' Mot. Dismiss 8. Plaintiffs also do not cite anything in the engagement letter capping what Philidor would have to pay over the course of the representation, and instead only limited expert and outside counsel fees Polsinelli was required to cover.

The only specific contractual provision that Plaintiffs could bootstrap their claims onto is the statement that "The Law Firm will administer the funds in the best interests of the Corporate Client and Mr. Davenport" in the fourth paragraph of the "Fees and Expenses" section. And

7

indeed, Plaintiffs do specifically point to it in paragraph 18 of their complaint. However, even this provision can't cover the conduct alleged in this suit. "In the best interests of [Plaintiffs]" in the context of a legal engagement letter could be taken to mean that the firm will spend its money to provide the best legal representation possible, not necessarily the cheapest. If this lawsuit was alleging that Defendants had taken the legal fee and spent it on things wholly unrelated to fulfilling the elements of a legal representation, there might be a case for breach of that term. Instead, Plaintiffs' allegations ultimately center on money spent on the legitimate, core elements of a legal defense—just more than they wanted. Plaintiffs may have wished that this agreement capped the total amount they would spend on legal services related to the Philidor/Valeant investigations, but that subjective intent is not reflected in the terms of the contract. The terms of the contract do not provide for a valid contract breach claim.

    1.   *The Duty of Good Faith Does Not Bail Out Plaintiff's Contract Claim*

Plaintiffs allege the conduct of Polsinelli constitutes a breach of the duty of good faith and fair dealing under the engagement letter. This claim also fails. Under Pennsylvania law, every contract imposes on the parties a duty of good faith and fair dealing in performance, but that obligation "is tied specifically to and is not separate from the express duties a contract imposes upon the parties". *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 561 (E.D. Pa. 2016) (quoting *Murphy v. Duquesne Univ. Of The Holy Ghost*, 565 Pa. 571, 598, 777 A.2d 418, 434 n.11 (2001)). Therefore, even a claim based on the duty of "good faith" has to anchor itself in the obligations imposed by the contract. The implied duty of good faith and fair dealing "cannot imply a term not explicitly contemplated by the contract." *John B. Conomos, Inc. v. Sun Co. (R&M)*, 2003 PA Super 310, ¶ 17, 831 A.2d 696, 707 (2003). So even on these grounds, Plaintiffs need to find words the in the contract that Defendants have breached.

The engagement letters didn't require Polsinelli to pay third party fees beyond the amounts specified. That Plaintiffs budgeted their legal costs assuming the firm was required to is not the concern of this Court. *See, e.g., Flannery v. Mid Penn Bank*, No. 1:CV-08-0685, 2008 WL 5113437, at *6 (M.D. Pa. Dec. 3, 2008) (dismissing breach of contract claims where "Plaintiff merely alleges that Defendants engaged in a course of conduct specifically permitted in the contract and obviously contemplated by the parties prior to forming the agreement."). Even though it might have led to Philidor paying more than it wanted, the company "cannot now allege that Defendants breached an implied duty by exercising their rights under the contract." *Id.*

Another allegation Plaintiffs make is that the duty of good faith was violated by virtue of Polsinelli having "understaffed" the trial by bringing two of its attorneys to court each day, while Wilmer Hale sent four of its attorneys each day. Compl. ¶ 31. Assuming the truth of this accusation—which Defendants dispute—the engagement letters do not specify how many attorneys should attend trial or work on any specific aspect of the case. Also, the bare comparison of two attorneys compared to four does not reveal anything about the quality of representation provided; Had one firm brought four first-year associates while the other brought two experienced partners, a claim that the four attorneys provided better representation might read as dubious.[6]

Because an identifiable contract provision has not been breached, and an obligation flowing from the contract provisions has not been breached, the breach of contract claim is dismissed.

---

[6] The pleadings in this case do not tell us which Wilmer Hale attorneys attended trial. However, Defendants state that partners Jonathan Rosen and Mary Clare Bonaccorsi entered appearances in the trial. Mot. Dismiss at 9 n.3.

> 2. *The Plaintiff's Lawsuit is Really a Negligence Tort Claim*

Plaintiff's allegations, while couched as breach of contract, are truly negligence tort claims. When a party brings tort and contract claims stemming from the same underlying conduct, "a court must decide 'whether the claim is truly one in tort, or for breach of contract.'" *Brenco Oil, Inc. v. Blaney*, No. 17-3938, 2017 WL 6367893, at *2 (E.D. Pa. Dec. 13, 2017) (quoting *Bruno v. Erie Ins. Co.*, 630 Pa. 79, 112, 106 A.3d 48, 68 (2014)).

Because Plaintiffs have failed to allege that the firm has breached a specific contract provision, the true "gist" of this action is negligence, an allegation that Polsinelli failed to exercise the appropriate standard of care. *New York Cent. Mut. Ins. Co. v. Edelstein*, 637 F. App'x 70, 73 (3d Cir. 2016) ("a claim sounds in negligence unless it is alleged that the party breached one of the 'specific executory promises which comprise the contract.'"); *Storm v. Golden*, 371 Pa. Super. 368, 378, 538 A.2d 61, 65 (1988) (ruling that a party's contract claims were really tort claims because "[the] breach of contract count does not allege that appellee failed to follow specific instructions nor that a breach of a specific provision of the contract occurred."). Plaintiffs are alleging, as Defendants argue, "that [Polsinelli] negligently performed its obligations such that Philidor allegedly paid more than it should have." Mot. Dismiss 10. Because the core of the claims sounds in tort, Plaintiffs' breach of contract count is dismissed.

### B. The Unjust Enrichment Claim Also Fails

Plaintiffs have also failed to make a proper claim for unjust enrichment. Unjust enrichment is a "quasi-contractual doctrine that does not apply in cases where the parties have a written or express contract." *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012) (internal quotations omitted, citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir.1987)); *see also Gemma Power Sys., LLC v.*

*Exelon W. Medway II, LLC*, No. 19 CIV. 00705 (CM), 2019 WL 3162088, at *12 (S.D.N.Y. July 1, 2019) ("the existence of a valid contract covering the scope of the allegations precludes pleading both breach of contract and causes of action sounding in quasi contract."). In this case, the engagement letters signed by Plaintiffs and Polsinelli established the financial terms of the representation, and the Complaint does not plead facts suggesting the contract is invalid, despite Plaintiffs vaguely gesturing that the fee agreement "may prove to be unenforceable", as rules of professional responsibility bar a lawyer from charging a disproportionate fee. *See* Pa. R. Prof. Conduct 1.5(a) ("A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee."). As a result, the unjust enrichment claim is dismissed.

### C. Plaintiffs Have Made a Proper Claim for Mismanagement of the Litigation

Plaintiffs have made a proper claim for mismanagement of the litigation. A plaintiff seeking to plead a legal malpractice claim must allege (1) employment of an attorney, (2) the failure of the attorney to exercise ordinary skill and knowledge, and (3) that such negligence was the proximate cause of damage to the plaintiff. *Kuniskas v. Walsh*, 2011 WL 841436, at *4 (M.D. Pa. Mar. 8, 2011) (citing *Rizzo v. Haines*, 520 Pa. 484, 499, 555 A.2d 58 (Pa. 1989)). Despite the argument that magic words like "ordinary skill and knowledge" are missing, Plaintiff has alleged facts showing the elements of legal malpractice; Plaintiffs argue that Polsinelli did not do enough of the work it was supposed to do as a part of a proper legal representation, leading to Plaintiffs paying millions of dollars more for their legal defense than they should have.

#### 1. *Plaintiffs Should be Allowed to Develop Discovery as to the Statute of Limitations*

Plaintiffs have pointed to doctrines that, if applicable, would allow a claim for mismanagement of the litigation to proceed. Defendants cite the two-year limitations period Pennsylvania places on negligence actions as barring a claim from Plaintiffs. 42 Pa. Stat. Ann. §

5524(7). Defendants argue the time bar applies because any applicable breach happened two years before the November 6, 2020 filing of the complaint in this case; the engagement began in 2016, the criminal trial started in May 2018, and the sentencing of Davenport was on October 30, 2018. Def's Mot. Dismiss 11. Each of these points in time was two years before the filing of the suit. However, Plaintiffs' claim is not based on the alleged lawyering deficiencies leading to the criminal conviction or a worse sentence, but that Defendants shifted work to other firms, increasing the cost of the representation. Because this is the basis of the claim, the relevant point the clock starts on a statute of limitations bar would be whenever Plaintiffs realized they were getting (purportedly) gouged on the cost of the representation. The complaint does not allege when this happened, and for a statute of limitations defense to be a proper basis for dismissal at the 12(b)(6) stage, the untimeliness of the suit must be immediately apparent "on the face of the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("In this circuit, however, we permit a limitations defense to be raised by a motion under Rule 12(b)(6) only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.") (internal quotation marks omitted, citing *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002)).

Furthermore, Plaintiffs have pointed to two different doctrines that might demonstrate the statute of limitations does not apply to their claims: the discovery rule and fraudulent concealment.

The discovery rule tolls the statute of limitations until the point plaintiff discovers the claim or could have discovered it with the exercise of due diligence. *Urland v. Merrell-Dow Pharms., Inc.*, 822 F.2d 1268, 1275 (3d Cir. 1987) ("Once a plaintiff possesses the salient facts concerning the occurrence of his injury and who or what caused it, he has the ability to

investigate and pursue his claim.") (quoting *Berardi v. Johns-Manville Corp.*, 334 Pa. Super. 36, 44, 482 A.2d 1067, 1071 (1984)). The doctrine of fraudulent concealment tolls the statute of limitations when a defendant keeps a plaintiff from learning the truth about the facts forming the basis of a claim. *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985) ("However, if through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry, the defendant is estopped from invoking the bar of limitation of action."). If, after discovery, it becomes clear that Plaintiffs filed suit past the two-year time bar, even if these or other Pennsylvania tolling doctrines are taken into account, Defendants may revive these questions on a Rule 56 motion.

    2. *The Voluntary Payment Doctrine Cannot Bar Plaintiffs' Claims at This Stage*

Defendants also point to the voluntary payment doctrine as barring suit in this action. This doctrine holds "it is elementary that one who voluntarily pays money with full knowledge of the facts, without any fraud having been practiced upon him, cannot recover it back." *Coregis Ins. Co. v. L. Offs. of Carole F. Kafrissen, P.C.*, 140 F. Supp. 2d 461, 463 (E.D. Pa. 2001) (quoting *Ochiuto v. Prudential Ins. Co.,* 356 Pa. 382, 384, 52 A.2d 228, 230 (Pa. 1947)). However, as Plaintiffs counter, this doctrine is an affirmative defense, and just as with the question of the statute of limitations, it cannot form the basis for dismissal at the Rule 12(b)(6) stage unless it is obvious "on the face of the complaint". *Wurtz v. Rawlings Co., LLC*, No. 12-CV-01182 JFB AKT, 2014 WL 4961422, at *6 (E.D.N.Y. Oct. 3, 2014). Plaintiffs argue the doctrine is inapplicable because the facts were not known; the flat fee was paid upfront, with performance to occur in the future. The conduct Plaintiffs allege would negate the premise of the doctrine—that the payments were made in full knowledge of the circumstances. Additionally, a major portion of Plaintiffs' claims focus on payments made not to Polsinelli but to third parties

*instead* of Defendants. Payments to third parties are generally not impacted by the voluntary payment doctrine. *See American Zinc Recycling Corp. v. TOPCOR Augusta, LLC*, Civ. A. No. 15-198, 2020 WL 4583870, at *4-6 (W.D. Pa. Aug. 8, 2020) (voluntary payment doctrine not applicable to action where plaintiff paid third parties to finish work the counterparty had improperly performed); *Hamid v. Stock & Grimes, LLP*, No. CIV.A. 11-2349, 2012 WL 2135502, at *3 (E.D. Pa. June 12, 2012) ("If money is paid to a non-party, the voluntary payment doctrine has no effect on the current suit."). Lastly, Plaintiffs challenge the "voluntariness" of the payments paid to these third parties during Davenport's criminal trial—failure to make these payments would have shortchanged his defense, they argue.

While all of these contentions by Plaintiffs—on the statute of limitations and the voluntary payment doctrine—have not yet been proven, they establish enough on the viability of the legal malpractice claim in the face of both potential defenses to survive a Rule 12 motion to dismiss.

**D. Standing and Defendant Matters**

Philidor's CEO, Andrew Davenport, has demonstrated standing to be a proper plaintiff in this action, but Jonathan N. Rosen, the Polsinelli partner in charge of the Philidor representation, is not a proper defendant. This section will address Davenport's standing before moving to Rosen's ability to be sued.

1. *Davenport Has Alleged Sufficient Standing to be a Plaintiff*

Defendants argue that Davenport is not a proper plaintiff in this suit, as he, the director of Philidor, falls within Pennsylvania's derivative injury rule, which prevents directors and officers of a corporation from suing based on "personal injuries that result directly from injuries to the corporation". *Jacoby Donner, P.C. v. Aristone Realty Cap., LLC*, No. CV 17-2206, 2018 WL

14

1609341, at *2 (E.D. Pa. Apr. 2, 2018) (citing *In re Kaplin*, 143 F.3d 807, 811–12 (3d Cir. 1998)). This doctrine applies "if the gravamen of the complaint is injury to the corporation". *Id.* However, Davenport has alleged an injury distinct from that suffered by Philidor; Davenport paid $2 million out of his own pocket to be represented by Polsinelli. Compl. ¶ 17. As the claims in this suit relate to monetary mismanagement by Defendants, Davenport having his own skin in the game constitutes an injury distinct from that of Philidor as a corporate entity. *See Kituskie v. Corbman*, 552 Pa. 275, 281, 714 A.2d 1027, 1030 (1998) ("An essential element to this cause of action is proof of actual loss rather than a breach of a professional duty causing only nominal damages"). Davenport can remain a plaintiff in this action.

   2. *Rosen is Not a Proper Defendant to be Sued Individually, as he is Accused of Nonfeasance, Not Misfeasance*

However, Defendants have correctly pointed out the deficiencies with Jonathan N. Rosen's status as a defendant. The allegations against Defendants are almost entirely based on conduct of Polsinelli the corporate entity, and not Rosen as an individual. Rosen is accused not of misfeasance, personally committing negligent acts, but nonfeasance, "omitting to do something which ought to be done," through the alleged failure to do "the work required to defend Davenport". *Shay v. Flight C Helicopter Servs., Inc.*, 2003 PA Super 86, ¶ 34, 822 A.2d 1, 18 (2003); Compl. ¶ 49. A corporate employee cannot individually be held liable for nonfeasance. *Shay*, 822 A.2d at 17. This is because the standard for piercing the corporate veil is "notoriously difficult", and when that action is taken, it is done because the individual's acts are responsible for liability, separate from that of the corporate entity. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001); *Shay*, 822 A.2d at 17. ("Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner . . . . where the

record establishes the individual's participation in the tortious activity."). As a result, Rosen is dismissed as a defendant.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss is **GRANTED** as to Plaintiffs' contract claims, and is **DENIED** as to Plaintiffs' negligence claims.

An appropriate order follows.